# In the United States District Court
## for the
## Western District of Texas

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.                                              § | SA-10-CR-130 |
| § | |
| DARYL RAY MCNAIR, JR.       § | |

### ORDER

On this day came on to be considered Defendant's motion to suppress (docket no. 21).  A hearing was held on May 19, 2010.  Upon reviewing the testimony, Defendant's motion, and the Government's Response, the motion is denied.

### Background

On or about August 2009, the FBI began an undercover investigation into peer-to-peer file sharing of child pornography.  The FBI then became aware of a user named Fram337.  The undercover FBI agent began browsing through Fram337's shared directories and observed numerous images of children engaged in sexual activity.  The FBI agent was able to download approximately 200 files from Fram337's shared directory.

Thereafter, the FBI agent attempted to identify the IP address utilized by Fram337.  The IP address was located.  It was then determined that the service provider for this address was SBC/AT&T.  A subpoena was served on AT&T for

the name associated with the IP address. It was discovered that the IP address was assigned to the Defendant, Daryl McNair, at an address located in San Antonio, Texas. FBI agents thereafter confirmed that the Defendant did indeed reside at the address.

On or about September 4, 2009, FBI Special Agent Jeffrey M. Allovio prepared an affidavit for a search warrant of the Defendant's home. A United States Magistrate Judge signed a warrant allowing for the search of the residence, and the seizure of any computers and other items.

On September 9, approximately eighteen agents and support staff arrived at the Defendant's home to execute the warrant. Each agent possessed a handgun and at least two of the agents were carrying M-4 rifles. The Defendant was given notice of the warrant and a security sweep was conducted. Once the security sweep was conducted and agents assessed the situation, an unspecified number of the agents left the scene.

Special Agent Allovio informed the Defendant that he was not under arrest, and the warrant was only to search the premises and seize computers and related items. At no time was the Defendant placed in handcuffs. Thereafter, Special Agent Allovio and Special Agent Larry Baker interviewed the Defendant. Special Agent Allovio testified that the Defendant was told that the interview was voluntary, that he was not under arrest, that they were investigating trafficking of child pornography, that he was free to leave at any time, and that it "was up to him to answer any questions."

Special Agents Allovio and Baker were wearing business suits during the

2

interview. Their handguns remained concealed. The interview initially took place in a bedroom on the second floor to allow for the search of the first floor. The interview lasted approximately one hour and forty minutes. During the interview, the Defendant admitted to having an interest in child pornography, and acknowledged that he had downloaded images and videos. During the interview Defendant signed a "consent to assume online presence" form, wherein he gave FBI agents authorization to take control of and use his "online presence" to Fram337 and other accounts. He acknowledged on this consent form that he had given this "consent freely and voluntarily, without fear, threats, coercion, or promises of any kind...."

On February 17, 2010, the grand jury returned a true bill of indictment against the Defendant, charging him with three counts (distribution, receipt, and possession of child pornography). He was arrested on February 19. On April 8, he filed the instant motion to suppress arguing that the FBI agents failed to administer any *Miranda*[1] warnings to him and that his verbal statements should be suppressed.

The Government argues that *Miranda* warnings were not required because the Defendant was not placed in custody, and a reasonable person would not have felt that he was in custody. The Government further argues that Defendant's statements were given voluntarily and freely.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

## Analysis

*Miranda* warnings are due only when a suspect interrogated by the police is "in custody." *Thompson v. Keohane*, 516 U.S. 99, 102 (1995). The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 107; *see also Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) (duty to give *Miranda* warnings is triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody' "); *U.S. v. Courtney*, 463 F.3d 333, 337 (5th Cir. 2006) ("A suspect is 'in custody' for purposes of *Miranda* 'when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'"); *U.S. v. Chavez*, 281 F.3d 479, 486 (5th Cir. 2002) ("To ascertain whether an individual was in custody, we examine all of the circumstances surrounding the interrogation, but ultimately ask whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.").

Two discrete inquiries are essential to determining whether a person is "in custody": "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v.*

*Keohane*, 516 U.S. at 112.

The Court concludes that the Defendant was not "in custody" when he made the verbal statements to the agents. He was not formally arrested. Indeed, he was told he was not going to be arrested on that date. Further, after examining all of the circumstances surrounding the interrogation, the Court concludes that there was no restraint on Defendant's freedom of movement of the degree associated with a formal arrest. The Defendant was told he was free to leave at any time, was informed that his interview was voluntary, and he was not handcuffed at any point. In hindsight, the necessity of eighteen agents and staff to execute the search warrant appears unnecessary and was likely unnerving. However, after the residence was "cleared" some agents left the premises. The other agents were merely collecting computers, hard drives, flash drives, film and CDs. Given the circumstances, the Court concludes that a reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time. *See U.S. v. McLean*, Slip Copy, 2010 WL 785170 (5th Cir. 2010) (Defendant interviewed by Internal Revenue Service agents was not "in custody" and, thus, was not required to be Mirandized); *U.S. v. Hurtado*, 899 F. 2d 371 (5th Cir. 1990) (interrogation by six agents in small room in defendant's residence was not "in custody" where she invited agents inside the home, did not ask them to leave, and agents did not threaten or brandish weapons).

## Conclusion

Defendant's motion to suppress (docket no. 21) is denied.

It is so ORDERED.

SIGNED this 20th day of May, 2010.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE